NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GATOR TAIL, LLC,**
*Plaintiff-Appellant*

**v.**

**MUD BUDDY LLC, DBA MUD BUDDY MANUFACTURING,**
*Defendant-Appellee*

-------------------------------------------------------------------------

**GATOR TAIL, LLC,**
*Plaintiff-Appellant*

**v.**

**GO-DEVIL MANUFACTURING COMPANY OF LOUISIANA INCORPORATED, DBA GO-DEVIL MANUFACTURERS OF LOUISIANA, INC.,**
*Defendant-Appellee*

---

2014-1747, 2014-1748

---

Appeals from the United States District Court for the Middle District of Louisiana in Nos. 3:08-cv-00125-BAJ-RLB, 3:08-cv-00124-BAJ-RLB, Judge Brian A. Jackson.

---

Decided:  June 22, 2015

———————————

MATTHEW WOLF, Arnold & Porter LLP, Washington, DC, argued for plaintiff-appellant.  Also represented by JOEL WILEY MOHRMAN, ANDERSON LAM CAO, McGlinchey Stafford, Houston, TX.

SAMUEL C. STRAIGHT, Ray Quinney & Nebeker P.C., Salt Lake City, UT, argued for defendant-appellee Mud Buddy LLC.  Also represented by JED H. HANSEN, Thorpe, North & Western LLP, Sandy, UT.

JOHN PARHAM MURRILL, Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, argued for defendant-appellee Go-Devil Manufacturing Company of Louisiana Incorporated.  Also represented by FREDRICK R. TULLEY.

———————————

Before MOORE, CLEVENGER, and WALLACH, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Gator Tail, LLC appeals the decision of the district court that the asserted patents are invalid as obvious, for lack of written description, and as indefinite. *Broussard v. Go-Devil Mfg. Co.*, 29 F. Supp. 3d 753, 757 (M.D. La. 2014).  This court has jurisdiction under 28 U.S.C. § 1295(a)(1) (2012). Because the district court's conclusion that the asserted claims are obvious was supported by factual findings that are not clearly erroneous, *we affirm.*

I

This case concerns United States Patent Nos. 7,052,340 ("the '340 patent") and 7,297,035 ("the '035 patent"), collectively referred to as Gator Tail's patents. Both patents name Kyle Broussard as the sole inventor,

and essentially claim the same invention: a short-tail mud motor with a horizontally mounted engine.

A

"Mud motors" are boat motors designed for shallow waters, and are primarily used in fishing and hunting. A mud motor's propeller is positioned near the water's surface so that the boat can maneuver in shallow water and in water congested with mud and vegetation.

The traditional mud motor, which dominated the market from the 1970s until the early 2000s, is the long tail motor. United States Patent No. 2,996,035 ("the Torrey Patent") describes one version of a long tail mud motor. The Torrey Patent discloses a propulsion unit that is mounted to the transom of a boat. It includes a motor (M), with a horizontally oriented engine that directly attaches to a propeller shaft (14). A belt (18) and pulleys (16 and 17) drive motion of the propeller shaft. U.S. Patent No. 2,996,035 (filed Dec. 3, 1958).



U.S. Patent No. 2,996,035 fig. 1.

While the long tail mud motor provided for boat operation in shallow and muddy waters, it posed several disadvantages. In particular, the long propeller shaft

means that these motors have a wide turning radius and are difficult to maneuver. Relatedly, steering the long propeller requires substantial space inside the boat.

To avoid this problem with the long tail motors, companies started looking to short tail mud motor designs. United States Patent No. 5,741,165 ("the Saito Patent") discloses one such motor. Saito's short tail motor was designed to increase range of movement, decrease boat space occupied by the motor, and incorporate a mounting bracket that would also permit use of conventional outboard motors on the same boat. *See* U.S. Patent No. 2,996,035 col. 1 ll. 45–51 (filed Jan. 27, 1996). To that end, Saito discloses a propulsion system that can be attached to the rear of a boat. It includes a vertically oriented engine (104) which connects to a drive shaft (117). The drive shaft, in turn, attaches to and drives motion in the propeller shaft (123).



*Figure 7*

U.S. Patent No. 2,996,035 fig. 7.

With this design, the propeller is shorter and that means better steering, maneuverability, and control. *Broussard v. Go-Devil Mfg. Co.*, 29 F. Supp. 3d at 771.

However, because the Saito short tail design uses a vertical engine and vertical drive shaft, it has to hang off the back of a boat. And that creates balance problems. *Id.* at 775.

B

Gator Tail's '035 patent is a continuation in part of the '340 patent. For the purposes of this appeal, the patents essentially claim the same invention: a belt-driven short tail mud motor with a horizontal engine capable of being mounted to the transom of a small boat in a manner common to outboard engines.



*Fig.16*

U.S. Patent No. 7,297,035 fig. 16 (filed May 22, 2006).

The overall design of the Gator Tail motor is similar to the Saito Patent, with two key differences. First, Gator Tail's patents require a horizontally oriented engine. *See, e.g.*, *Broussard*, 29 F. Supp. 3d at 797 (describing Gator Tail's patents as containing horizontal output engines). Second, the engine connects directly to a timing belt drive gear (104) that attaches to and drives motion in the parallel propeller. Saito, on the other hand, does not disclose a timing belt and it requires a vertical, not horizontal, engine.

As an example, claim 1 of the '035 patent discloses:

A marine craft comprising

a hull comprising a transom; and

a portable drive assembly temporarily attached to the transom, the portable drive assembly comprising

an elongated drive housing enclosing an upper drive assembly and a lower driven assembly and a timing belt connecting the upper drive assembly to the lower driven assembly; and

an engine mounting plate attached externally to the drive housing adjacent the upper drive assembly perpendicular to the drive housing;

wherein the lower driven assembly comprises a propeller shaft at least a portion of which is enclosed within a shaft housing attached to the drive housing adjacent the driven assembly, the shaft housing extending in excess of 18 inches beyond the drive housing, and a propeller attached to the propeller shaft.

The other asserted claims depend from, or are essentially identical to, this claim.

## II

Gator Tail alleged that defendants, Mud Buddy, LLC ("Mud Buddy") and Go-Devil Manufacturing Company of Louisiana ("Go-Devil") manufacture products that infringe claims 1, 3–9, and 11–13 of the '340 patent and claims 1, 3–7, and 9–13 of the '035 patent.

## A

After Gator Tail filed its complaints, Mud Buddy requested an ex parte reexamination of both patents by the United States Patent and Trademark Office ("PTO").

During those reexamination proceedings, the examiner initially rejected all the claims as obvious in light of the Saito Patent and other references. After a series of exchanges between Mr. Broussard and the PTO, including the introduction of expert declarations and additional claims, the PTO confirmed all claims of the patents. In relevant part, the PTO concluded that Mr. Broussard's expert successfully established "modification of the Saito Patent proposed in the rejection would lead to significant changes . . . which would not be obvious to one of ordinary skill in the art." *Broussard*, 29 F. Supp. 3d at 790.

B

The district court held a three day bench trial on the issue of patent validity. In its amended final judgment, the district court held that all the claims of the '340 and '035 patents were invalid as either obvious, indefinite, or failing the written description requirement.

On appeal, Gator Tail raises three specific challenges to the amended final judgment: (1) the holding of obviousness of the asserted claims of the '340 and '035 patents, (2) the holding that claim 1 of the '340 patent is invalid for lack of written description, and (3) the holding that claims 1, 8, and 14 of the '340 patent and claim 1 of the '035 patent are invalid as indefinite under 35 U.S.C. § 112. Claims 1 and 8 of the '340 patent and claim 1 of the '035 patent were all asserted claims. Because those claims were held invalid as obvious, and we affirm that holding, we do not address the alternative holding that those claims are invalid on other grounds. Method claim 14 of the '340 patent was not listed as an asserted claim, but the district court's holding of invalidity includes claim 14, and the obviousness analysis of the district court applies as well to claim 14 of the '340 patent, making the indefiniteness holding an alternative ground that we need not reach.

The district court's obviousness analysis focused primarily on claim 1 of the '035 and claim 1 of the '340 patent. The court determined the content of the two claims was indistinguishable, and applied the same reasoning to invalidate both. All the other asserted claims depend from these claims. Building on its analysis of claim 1 of the '340 patent, the court made separate findings that each asserted claim was obvious.

As it relates to this appeal, the district court focused on the Torrey and Saito Patents when assessing obviousness. And the court found that there were only limited ways to improve upon Torrey or Saito. What is more, those improvements were merely predictable uses of prior art elements. The court also found that one of ordinary skill in the art is a person with an undergraduate education in mechanical engineering and experience with marine propulsions systems. Because, through the lens of a person of ordinary skill, the asserted claims were merely a predictable combination of Saito and Torrey, the district court held that the claims were invalid.

First, the court considered whether it would be obvious to replace Saito's vertical engine with a horizontal one. Because Saito used a vertical drive shaft motor, the whole propulsion unit had to hang off the back of a boat. This, in turn, created balance problems. The court found that one of ordinary skill would be motivated to solve this balance problem by moving Saito's engine further into the boat—above the transom. And "the expert witnesses tended to agree that in order to relocate the engine above the transom, one of ordinary skill in the art would necessarily substitute Saito's vertical drive-shaft engine for a horizontal drive-shaft engine." *Broussard*, 29 F. Supp. 3d at 775. In addition, the court was persuaded by expert testimony that one of ordinary skill would use a timing belt to connect a horizontal drive engine to the horizontal propeller. Overall, the court concluded this was a case where there were a limited number of design options

available. And one of ordinary skill would have seen the benefit of upgrading Saito in the way Gator Tail's patents did.

The district court then conducted a separate obviousness inquiry, based primarily on the Torrey Patent. The only significant limitation present in Gator Tail's patents, but missing from the Torrey Patent, is the elongated drive housing. This drive housing refers to the overall housing that contains the engine, the timing belt, and the connection to the propeller in the lower portion. And the district court found that, like Mr. Broussard and the Saito inventors, a person of ordinary skill would be motivated to improve on the long tail motor with a short tail design. Furthermore, implementing the short tail requires an elongated drive housing. Therefore, the court concluded that claim 1 of both patents was an obvious combination of prior art elements.

Concluding that the defendants established a prima facie case of obviousness, the district court then considered Gator Tail's evidence of secondary considerations—as potentially objective evidence of non-obviousness. The court determined that Gator Tail's evidence of commercial success was not enough to support a finding of non-obviousness. Similarly, the court was not persuaded by Gator Tail's arguments of unexpected results, long unmet need, failure of others, or copying.

## II

On appeal, Gator Tail makes three main arguments challenging the district court's obviousness analysis: that the court failed to give proper deference to the PTO, that the Saito reference teaches away from the claimed invention, and that the court failed to correctly consider evidence of Gator Tail's commercial success.

Obviousness is a question of law, which this Court reviews de novo, and underlying factual questions are

reviewed for clear error. *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1379 (Fed. Cir. 2008).

## A

Gator Tail complains that the district court misunderstood the nature of PTO reexamination proceedings, which led the court to misapply the presumption of validity. Brief for Plaintiff-Appellant at 35–36, Gator Tail v. Mud Buddy, Nos. 14-1747, 14-1748 (Fed. Cir. Nov. 3 2014); *see also* 35 U.S.C. § 282. According to Gator Tail, the court overemphasized the PTO's interim rejections, and therefore found that the "ultimate acceptance of those patents was half-hearted and due little deference." Brief for Plaintiff-Appellant at 35.

District courts are directed to consider a PTO reexamination decision as evidence when determining invalidity. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985). While the court must consider the reexamination as evidence, it is not bound by the PTO's decision. *Id.* at 1555. Here, the district court discussed the PTO proceedings at length, and explained why it did not afford substantial weight to the PTO's decision.

In particular, the court credited expert testimony introduced during trial—testimony which was contrary to declarations submitted during reexamination and which undermined the PTO's reasoning. Gator Tail's expert declaration to the PTO stated that one of ordinary skill would be discouraged from reorienting the engine in Saito to match the claimed horizontal engine. And the PTO examiner relied heavily on that declaration when allowing the patents. *Broussard*, 29 F. Supp. 3d at 782. However, at trial, all parties' experts admitted that one of ordinary skill would be motivated to substitute the vertical engine with a horizontal one to overcome balance problems. *See, e.g.*, *Broussard*, 29 F. Supp. 3d at 775–76, 782–83. The court considered the trial testimony to be a

more complete picture of the evidence, and concluded that the PTO decision on reexamination deserved less weight. The district court's consideration of the PTO reexamination was not clearly erroneous.

B

Next, Gator Tail argues that the Saito reference unequivocally teaches away from using a horizontal engine in a short tail motor. And, where a reference teaches away from the claimed invention, the patents are more likely to be non-obvious. *See KSR Int'l Co. v. Teleflex*, 550 U.S. 398, 416 (2007). According to Gator Tail, the district court disregarded Saito's teaching away. However, we agree with the district court that Saito does not teach away from Gator Tail's patents.

A reference teaches away from a claimed invention "when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994). References may also teach away if, when taking the two references in combination, it would produce a "seemingly inoperative device." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1354 (Fed. Cir. 2001).

On the other hand, if a reference describes a modification as "somewhat inferior," then the reference does not teach away. *Gurley*, 27 F.3d at 553. "A reference does not teach away . . . if it merely expresses a general preference for an alternative invention but does not 'criticize, discredit, or otherwise discourage' investigation into the invention claimed." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1327 (Fed. Cir. 2009).

The Saito Patent does not teach away from the use of horizontal motors. Instead, it describes the shortcomings of long tail motors that use horizontal engines. For exam-

ple, the Saito Patent explains how the horizontal engine motors that were on the market at the time took up too much space in the boat. The Saito Patent also describes the limited range of movement enabled by the long tail motor. In fact, the Saito Patent states that it was "directed towards several embodiments of outboard marine propulsion systems that overcome the disadvantages of the prior art . . ." U.S. Patent No. 5,741,165 col. 1 ll. 45–55.

Nowhere does Saito suggest that using a horizontal engine would render the motor inoperable. It merely describes the benefits of its vertical engine when compared to the dominant prior art—the long tail motor. These are not statements that would deter one of ordinary skill from combining features of the long-tail motor with the Saito Patent. *See United States v. Adams*, 383 U.S. 39, 52 (1966) (finding that one of ordinary skill in the art would have to ignore long-accepted factors in the field of wet batters to arrive at the claimed invention). In fact, the district court heard several experts testify regarding why one of ordinary skill in the art would be motivated to replace Saito's vertical motor with a horizontal one.

The Saito Patent explains why it is an improvement over the prior art—prior art that had a horizontal engine. Therefore, Saito inevitably suggests that horizontal engines are inferior to its vertical engine. However, these statements do not teach away from Gator Tail's invention.

## C

Finally, Gator Tail argues that the district court applied the wrong legal test when considering evidence of commercial success. Any error by the district court was, however, harmless error because Gator Tail has failed to produce evidence of success suggesting the patents are not obviousness.

Evidence of commercial success is only relevant to the obviousness inquiry if "there is a nexus between the claimed invention and the commercial success." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006). Where the marketed product is coextensive with the claimed features, then the court should presume that commercial success of the product is due to the patented invention. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000).

According to Gator Tail, the district court failed to presume that the company's commercial success was due to the patented invention. Instead, the court incorrectly evaluated whether individual patented features were present in the prior art. And where an individual feature was present in the prior art, the court concluded it was not relevant to commercial success.

In this case, the parties do not dispute that the Gator Tail product embodies the patents in question. Therefore, the court should have presumed that any commercial success of Gator Tail's motors was a function of the claimed patent. And that commercial success should have weighed in favor of non-obviousness, unless the defendants proved the alleged success was due to something else. *See Brown & Williamson*, 229 F.3d at 1130 (once the patentee shows that the patent and product are coextensive, the "burden shifts to the party asserting obviousness to present evidence to rebut the presumed nexus").

However, if there was any error in the district court's nexus analysis, it was harmless. In this case, Gator Tail's only evidence of commercial success is the fact that it sold zero motors in 2004 and by 2014 it was selling one thousand motors per year. Gator Tail has failed to establish the overall size of the mud motor market, the size of the short tail motor market, or any other facts that would indicate whether selling one thousands units per year is a commercial success in this industry.

"This court has noted in the past that evidence related solely to the number of units sold provides a very weak showing of commercial success, if any." *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (citing *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1026–27 (Fed. Cir. 1985)). Because Gator Tail failed to introduce any evidence that establishes commercial success, the court's arguably flawed nexus analysis is harmless error.

CONCLUSION

All of the claims at issue of the two patents in suit are invalid under 35 U.S.C. § 103. The amended judgment of the district court is affirmed.

**AFFIRMED**

No costs.